IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MIA REED AND COMPANY, LTD.,      §
                                 §
            Plaintiff,           §
                                 §
v.                               §      CIVIL ACTION NO. H-10-4440
                                 §
UNITED FIRE & CASUALTY COMPANY,  §
                                 §
            Defendant.           §

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiffs' Amended Motion for Leave to Amend Complaint and for Remand (Docket Entry No. 46)[1] filed by Mia Reed and Company, Ltd. ("Mia Reed"). United Fire & Casualty Company ("United Fire")[2] and United National Insurance Company ("United National")[3] have filed responses in opposition. For the reasons stated below, the court will grant Mia Reed's Amended Motion for Leave and remand this action to the state court.

**I.  Background**

This action concerns the defendants' handling of the insurance claim Mia Reed submitted for damages sustained by a number of its

---

[1]Plaintiffs' Amended Motion for Leave to Amend Complaint and for Remand ("Mia Reed's Amended Motion for Leave"), Docket Entry No. 46.

[2]Defendant's United Fire & Casualty Company's Response to Plaintiff's Amended Motion for Leave to Amend Complaint and for Remand ("United Fire's Response"), Docket Entry No. 48.

[3]United National Insurance Company's Response to Plaintiffs' Amended Motion for Leave to Amend Complaint and for Remand ("United National's Response"), Docket Entry No. 47.

retail shopping centers during Hurricane Ike in September of 2008.[4] At issue in Mia Reed's Amended Motion for Leave is whether Mia Reed should be granted leave to file an amended complaint[5] that would add a Texas insurance agent (Sheryl Bittick) and a Texas insurance agency (GEM Insurance Agencies, L.P.) as defendants.[6]   Because plaintiff Mia Reed is a citizen of Texas,[7] adding these two new Texas defendants would destroy complete diversity in this removed action and would deprive the court of subject-matter jurisdiction.

## A.   Mia Reed's Insurance Claim

Mia Reed alleges that it "notified [United Fire] of the loss [suffered by its retail shopping centers] and requested an investigation and payment under the terms of the insurance policy."[8]   Mia Reed further alleges that United Fire failed to "adequately investigate or pay" Mia Reed's insurance claim.[9]   Mia Reed alleges claims for "violations of the common laws of the State

---

[4]Plaintiff's Original Petition, Exhibit C to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 2-3.

[5]Plaintiff's Second Amended Complaint ("Second Amended Complaint"), Exhibit A to Mia Reed's Amended Motion for Leave, Docket Entry No. 46-1.

[6]<u>Id.</u> at 2.

[7]Plaintiff's Original Petition, Exhibit C to Defendant's Notice of Removal, Docket Entry No. 1-3, p. 1.

[8]Plaintiff's Original Petition, Exhibit C to Defendant's Notice of Removal, Docket Entry No. 1-3, p. 3.

[9]<u>Id.</u>

of Texas," breach of contract, a violation of the common law duty of good faith and fair dealing, and violations of the Texas Insurance Code.[10]

**B.   Procedural Background**

Mia Reed filed this action on September 15, 2010, in the 61st District Court of Harris County, Texas.[11]  United Fire removed the case to federal court on November 9, 2010.[12]  United Fire alleged that the court had federal diversity jurisdiction under 28 U.S.C. § 1332 and that removal was proper under 28 U.S.C. §§ 1441 and 1446.[13]

United National Insurance Company moved to intervene on December 14, 2011.[14]  United National alleged that this suit "involves the same property, same loss, same alleged cause of loss, and same damages as a separate lawsuit filed by [Mia Reed] against United National in the 127th Judicial District Court of

---

[10]Id. at 3-4.

[11]Id. at 1.   United Fire was served on October 21, 2010. Citation Corporate, Exhibit B to Defendant's Notice of Removal, Docket Entry No. 1-2.

[12]Defendant's Notice of Removal, Docket Entry No. 1.

[13]Id. at 2.

[14]United National Insurance Company's Motion to Intervene, Docket Entry No. 25.

Harris County."[15]   The court granted the motion to intervene on January 11, 2012.[16]

The court entered an amended scheduling order on January 26, 2012.[17]  The order provided that the deadline to add new parties was March 2, 2012, and the deadline to amend the pleadings was April 2, 2012.[18]

## C.   Mia Reed's Motion for Leave

Mia Reed filed Plaintiff's Motion for Leave to Amend Complaint on March 2, 2012,[19] the last day allowed under the scheduling order to add new parties.[20]  The motion itself consisted of six lines of text asking the court to grant Mia Reed leave to amend under Rule 15 and noting that the proposed amended complaint was attached as an exhibit.[21]  The attached amended complaint added MRX GP,

---

[15]Id. at 2.  Mia Reed reports that this state court case was "stayed . . . pending resolution of [United National's] motion to intervene into this action."  Mia Reed's Amended Motion for Leave, Docket Entry No. 46, p. 2.

[16]Order Granting National Insurance Company's Motion to Intervene, Docket Entry No. 31.

[17]Fourth Amended Docket Control Order, Docket Entry No. 35.

[18]Id. at 1.

[19]Plaintiff's Motion for Leave to Amend Complaint ("Mia Reed's Motion for Leave"), Docket Entry No. 36.

[20]Fourth Amended Docket Control Order, Docket Entry No. 35, p. 1.

[21]Mia Reed's Motion for Leave, Docket Entry No. 36, p. 1.

L.L.C. as a plaintiff and added two defendants, both alleged to be
citizens of Texas:   insurance agent Sheryl Bittick and GEM
Insurance Agencies, L.P. ("GEM Insurance").[22] Mia Reed alleged that
MRX GP, L.L.C. "is now the entity that owns Northgate Shopping
Center."[23]  As to the two nondiverse defendants, Mia Reed made the
following allegations:

> Prior to Hurricane Ike, Plaintiffs purchased through
> Defendants Sheryl Bittick and Gem Insurance Agency, L.P.,
> commercial property insurance policies from both
> Defendant United National and Defendant United Fire
> covering Northgate Shopping Center for the effective
> dates of September 28, 2007 through September 28, 2008.[24]

Mia Reed alleged a negligence claim against Bittick and GEM
Insurance:

> 22.  Defendants Sheryl Bittick and GEM Insurance
>      Agencies,   despite having been notified of
>      Plaintiffs' claim under their insurance policies,
>      negligently failed to make the Defendant United
>      National aware of the claim.
>
> 23.  Defendants Sheryl Bittick and Gem Insurance
>      Agencies failed to accurately designate the
>      Plaintiffs' property on their insurance contracts.
>
> 24.  As a result of the negligence of Defendants Bittick
>      and GEM Insurance Agencies, Plaintiffs are subject
>      to loss of their claims against one or both of the
>      Defendant carriers.[25]

--------------------------------------------------

[22]Plaintiff's First Amended Complaint, Exhibit A to Mia Reed's
Motion for Leave, Docket Entry No. 36-1, pp. 1-2.

[23]Id. at 2.

[24]Id. at 2-3.

[25]Id. at 5.

United Fire[26] and United National[27] filed responses to Mia Reed's Motion for Leave.[28]   United Fire argued that the statute of limitations barred Mia Reed's negligence claim against Bittick and GEM Insurance, and that this fact shows that Mia Reed's purpose in seeking leave to amend is to destroy diversity.[29]   United National argued that Mia Reed's chance of recovering on its negligence claim against Bittick and GEM Insurance was "slim, if not non-existent" because it was not yet ripe and was barred by the statute of limitations.[30]

### D.   Mia Reed's Amended Motion for Leave

Mia Reed filed its Amended Motion for Leave on April 2, 2012,[31] the deadline for the parties to amend their pleadings.[32]   The

---

[26]Defendant's United Fire & Casualty Company's Response to Plaintiff's Motion for Leave to Amend Complaint ("United Fire's Response to Plaintiff's Motion for Leave"), Docket Entry No. 38.

[27]United National Insurance Company's Response to Plaintiff's Motion for Leave to Amend Complaint ("United National's Response to Plaintiff's Motion for Leave"), Docket Entry No. 40.

[28]United Fire and United National both requested oral argument on Mia Reed's Motion for Leave.   Request for Oral Hearing, Docket Entry No. 39; United National Insurance Company's Request for Oral Argument, Docket Entry No. 42.   The court will deny these requests for oral argument.

[29]United Fire's Response to Plaintiff's Motion for Leave, Docket Entry No. 38, p. 3.

[30]United National's Response to Plaintiff's Motion for Leave, Docket Entry No. 40, pp. 6-7.

[31]Mia Reed's Amended Motion for Leave, Docket Entry No. 46.

[32]Fourth Amended Docket Control Order, Docket Entry No. 35, p. 1.

proposed Second Amended Complaint,[33] like the First Amended Complaint, lists MRX GP, L.L.C. as a new plaintiff and Bittick and GEM Insurance as new defendants.[34]  What is different about the Second Amended Complaint is that, instead of a negligence claim against Bittick and GEM Insurance, Mia Reed now alleges a breach of fiduciary duty claim against these non-diverse defendants.

20.  Defendants Sheryl Bittick and GEM Insurance Agencies, by virtue of their established business relationship as Plaintiffs' insurance broker, were in a fiduciary relationship under Texas law.

21.  Defendants Sheryl Bittick and GEM Insurance Agencies were the agents, implied and/or apparent agents for the defendant Insurance companies.

22.  Defendants Sheryl Bittick and GEM Insurance Agencies, despite having been notified of Plaintiffs' claim under their insurance policies, breached the duties imposed by their relationship by failing to timely notify Defendant United National of Plaintiff's claim regarding Northgate Shopping Center.

23.  Defendants Sheryl Bittick and GEM Insurance Agencies further breached their fiduciary duties to Plaintiffs by failing to accurately describe the Plaintiffs' property on their insurance contracts.

24.  As a result of the breach of the duties imposed by their fiduciary relationship by Defendants Bittick and GEM Insurance Agencies, Plaintiffs are subject to loss of their claims against one or both of the Defendant carriers.[35]

---

[33]Second Amended Complaint, Exhibit A to Mia Reed's Amended Motion for Leave, Docket Entry No. 46-1.

[34]Id. at 1-2.

[35]Id. at 4-5.

**E.   Defendants' Responses to Mia Reed's Amended Motion for Leave**

United Fire and United National argue that Mia Reed's Amended Motion for Leave is designed to destroy diversity.  United Fire contends that Mia Reed is attempting to avoid the statute of limitations bar on its negligence claim by "recast[ing] the claims as breach of fiduciary duty claims with a four year statute of limitations."[36]  United National agrees, arguing that Mia Reed's claims in the Amended Motion for Leave are no more meritorious than those in the initial Motion for Leave.

> The updated proposed complaint still seeks to destroy diversity by adding the same insurance agent and agency as defendants . . . .  The only difference is Plaintiff has recast its negligence claims against the Insurance Agent Defendants into a breach of fiduciary duty claim, which Plaintiff alleges jointly against United National and the Insurance Agent Defendants in an attempt to make the claims look more intertwined than they really are.[37]

United Fire and United National argue the court should deny Mia Reed leave to amend because "[i]n deciding whether to grant a motion to amend a complaint the court should consider the futility of [the] amendment."[38]  United Fire and United National argue that Mia Reed's breach of fiduciary duty claim is futile because (1) "[i]nsurers do not have a fiduciary duty to their insureds,"

---

[36]United Fire's Response, Docket Entry No. 48, p. 2.

[37]United National's Response, Docket Entry No. 47, p. 1.

[38]United Fire's Response, Docket Entry No. 48, p. 3 (citing Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993)); accord United National's Response, Docket Entry No. 47, p. 3.

(2) "[p]rofessional negligence claims . . . cannot be recast as breach of fiduciary duty claims," and (3) "[i]ndependent insurance agents are the agent of the insured, not the insurer."[39]

United Fire also argues that because one of the relevant shopping centers is in Bankruptcy Court, "there is a possibility that the interest in this lawsuit could be assigned in a sale of the debtor's property" and "it appears Plaintiff may not even have authority to proceed with claims against the two non-diverse parties."[40] United Fire argues that this is a basis for denying Mia Reed's Amended Motion for Leave.

Finally, United Fire and United National state that MRX GP, LLC "is neither a named insured nor an owner of an insured property" and asks the court to order MRX BP, LLC to establish its standing as a plaintiff in this suit.[41]

## II.   <u>Applicable Law</u>

### A.   Rule 15 Standard

If a party's motion for leave to amend a pleading is filed before the deadline set out by the court's scheduling order, Federal Rule of Civil Procedure 15 ordinarily governs whether the

---

[39]United Fire's Response, Docket Entry No. 48, pp. 3-4; <u>accord</u> United National's Response, Docket Entry No. 47, pp. 3-4.

[40]United Fire's Response, Docket Entry No. 48, p. 6.

[41]<u>Id.</u> at 6-7; <u>accord</u> United National's Response, Docket Entry No. 47, p. 2 n.1.

amendment will be allowed.  Mia Reed filed its Motion for Leave to Amend on March 2, 2012,[42] the deadline for adding parties.[43]  Mia Reed filed its Amended Motion for Leave on April 2, 2012,[44] the deadline for the parties to amend their pleadings.[45]  Mia Reed's Motion for Leave, and the attached First Amended Complaint, added the new plaintiff and non-diverse defendants and was filed in compliance with the March 2, 2012, deadline.  The Second Amended Complaint attached to Mia Reed's Amended Motion for Leave added no additional parties, but merely changed the claims alleged.  Mia Reed therefore complied with the Fourth Amended Docket Control Order.

Under 15(a), a "party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  The rule provides that

---

[42]Mia Reed's Motion for Leave, Docket Entry No. 36.

[43]Fourth Amended Docket Control Order, Docket Entry No. 35, p. 1.

[44]Mia Reed's Amended Motion for Leave, Docket Entry No. 46.

[45]Fourth Amended Docket Control Order, Docket Entry No. 35, p. 1.

"[t]he court should freely give leave when justice so requires." Id.

**B.   Amendments Triggering a <u>Hensgens</u> Analysis**

Mia Reed's proposed amendment, however, faces a different standard.  An amendment that would add a "new nondiverse defendant in a removed case" should be scrutinized "more closely than an ordinary amendment." <u>Hensgens v. Deere & Co.</u>, 833 F.2d 1179, 1182 (5th Cir. 1987).  28 U.S.C. § 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  Increased scrutiny is appropriate because "the court's decision will determine the continuance of its jurisdiction." <u>See Hensgens</u>, 833 F.2d at 1182.

In considering Mia Reed's proposed amendment the court is confronted with competing interests.  There is the possibility of parallel proceedings at the state and federal levels, which could lead to "inconsistent results and the waste of judicial resources." Id.  There is also the diverse defendant's "interest in retaining the federal forum." Id.  In deciding a case involving these competing interests, the court "should use its discretion in deciding whether to allow that party to be added." Id.

The Fifth Circuit in <u>Hensgens</u> set out a nonexhaustive list of factors the court should consider in balancing the defendant's

interests in maintaining the federal forum with the competing interests of avoiding parallel lawsuits.  Id.  The list includes (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities.  Id.

## C.   Futile Amendments

The Fifth Circuit has held that courts may deny leave to amend where it is unreasonable to conclude that the amendment would enable the plaintiff to recover.

> [I]t is within the district court's discretion to deny [leave to amend a complaint] as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant. When the court's *sole* reason for denying such an amendment is futility, however, we must scrutinize that decision somewhat more closely, applying a de novo standard of review similar to that under which we review a dismissal under Rule 12(b)(6).

Wilson v. Bruks-Klockner, Inc., 602 F.3d 363, 368 (5th Cir. 2010). Under Fifth Circuit law "futility" means "that the amended complaint would fail to state a claim upon which relief could be granted." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (cited with approval by Wilson, 602 F.3d at 368 n.10). In determining futility, Fifth Circuit courts "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (internal quotation marks omitted).

-12-

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  A Rule 12(b)(6) motion requires the court to "accept the plaintiff's well-pleaded facts as true and [to] view them in the light most favorable to the plaintiff."  Chauvin v. State Farm Fire & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007).

### III.  Analysis

**A.    The Argument that the Breach of Fiduciary Duty Claim is Futile**

The defendants argue that Mia Reed's breach of fiduciary duty claim is futile because (1) "[i]nsurers do not have a fiduciary duty to their insureds," (2) "[p]rofessional negligence claims . . . cannot be recast as breach of fiduciary duty claims," and (3) "[i]ndependent insurance agents are the agent of the insured, not the insurer."[46]   The futility argument bears on the first Hensgens factor (the purpose of the motion for leave) and the third Hensgens factor (prejudice from denial of the motion for leave).  Before addressing the Hensgens factors, therefore, the court will isolate the question of the claim's futility.  For the reasons stated below, the court concludes that the defendants have not met

---

[46]United Fire's Response, Docket Entry No. 48, pp. 3-4; accord United National's Response, Docket Entry No. 47, pp. 3-4.

the standard for a Rule 12(b)(6) motion to dismiss regarding the claims against the non-diverse defendants, and that they therefore have not met the standard for denying as futile a motion for leave to amend.

Although defendants argue that "insurers do not have a fiduciary duty to their insureds," defendants fail to prove that there could be no fiduciary relationship between Mia Reed and Bittick and GEM Insurance. The absence of a formal fiduciary relationship does not mean that there is never an informal fiduciary relationship, and the statements from the cases cited by defendants pertain to formal fiduciary relationships. See, e.g., Wayne Duddlesten, Inc. v. Highland Ins. Co., 110 S.W.3d 85, 96 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("There is no general fiduciary duty between an insurer and its insured. To impose an informal fiduciary relationship in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. Appellant has not directed us to, and we are not aware of any Texas case that has found a fiduciary relationship between an insured and its insurer.") (internal citations omitted). Mia Reed's Second Amended Complaint arguably alleges an informal fiduciary relationship between Mia Reed and the non-diverse defendants: "Defendants Sheryl Bittick and GEM Insurance Agencies, by virtue of their established business relationship as Plaintiffs' insurance broker, were in a fiduciary

-14-

relationship under Texas law."[47]   While the court in <u>Wayne</u>
<u>Duddlesten</u> stated that it was aware of no case were any kind of
fiduciary duty relationship between insurer and insured existed, it
does not follow that an informal fiduciary duty relationship could
not exist on any set of facts.   The court concludes that the
defendants would not succeed on a Rule 12(b)(6) motion on this
ground.

Second, defendants have not shown that Mia Reed has improperly
"recast" its negligence claim as a breach of fiduciary claim.   The
case the defendants cite for the general proposition that a
plaintiff cannot recast a professional negligence claim as a breach
of fiduciary duty claim reached its holding on grounds highly
specific to the allegations made by the plaintiff in that case.

> After reviewing the record before us, we conclude the
> allegations upon which appellants rely to support their
> breach of fiduciary duty and conspiracy to commit fraud
> claims do nothing more than recast their claims for
> professional negligence under alternative labels.   The
> allegations involve the question of whether Harris failed
> to exercise the degree of care, skill, or diligence
> . . . . [Appellants] do not complain specifically about
> any improper benefit Harris received from representing
> appellants. . . . [W]e conclude the gist of appellants'
> allegations involves the quality of Harris's representa-
> tion rather than the integrity and fidelity of the
> attorney.   These complaints sound in negligence and not
> breach of fiduciary duty or fraud.

<u>Won Pak v. Harris</u>, 313 S.W.3d 454, 458 (Tex. App.—Dallas 2010, pet.
denied).   The defendants provide no detailed argument that the

---

[47]Second Amended Complaint, Exhibit A to Mia Reed's Amended
Motion for Leave, Docket Entry No. 46-1, p. 4.

"gist" of Mia Reed's allegations really involves issues germane to
the negligence cause of action instead of the breach of fiduciary
duty cause of action.   Furthermore, the court in Won Pak was
applying Texas's "anti-fracturing" doctrine, which "prevents plain-
tiffs from converting what are actually professional negligence
claims against an attorney into [an] other claim[] such as . . .
breach of fiduciary duty."   Id. at 457.   Defendants provide no
argument that a Texas state court's use of the anti-fracturing
doctrine in a summary judgment ruling in a case against an attorney
should be determinative in a federal court's determination on a
Rule 12(b)(6) question in a claim against an insurance agent and
agency.   The court concludes that defendants have not established
that Mia Reed's breach of fiduciary duty claim must, as a matter of
law, be brought as a negligence claim.

        Third, the defendants have failed to show that Mia Reed's
breach of fiduciary duty claim is impossible because insurance
agents are not agents of the insurer, but rather of the insured.
The case that the defendants cite states the general rule that
"[u]nlike independent adjusters, an insurance agent or broker is
generally an agent of the insured, not the insurer."   Glenbrook
Patiohome Owners Ass'n v. Lexington Ins. Co., 2011 WL 666517, at *9
(S.D. Tex. February 14, 2011) (internal quotation marks omitted).
However, the court in Glenbrook was clear that the issue of whether
an insurance agent is an agent of the insurer is a question of
fact:

> An insurer may, by its own actions, place an independent insurance agent in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice.  Glenbrook has not identified facts supporting an inference that . . . [the] agent/broker should be considered Lexington's agent.

Glenbrook, 2011 WL 666517, at *9 (internal quotation marks and citations omitted).  The fact that insurance agents are not "generally" the agents of the insurer is insufficient to establish as a matter of law that, in this case, Bittick and GEM Insurance were not agents of the defendants.

For the reasons stated above, the court concludes that dismissal under Rule 12(b)(6) would not be appropriate and that Mia Reed's Amended Motion for Leave should not be denied on the basis of futility.

**B.  Analysis Under the Hensgens Factors**

1.  Determining the Purpose of Mia Reed's Motion

When district courts in the Fifth Circuit analyze the first Hensgens factor, "they consider 'whether the plaintiffs knew or should have known the identity of the nondiverse defendant when the state court complaint was filed.'"  Gallegos v. Safeco Ins. Co. of Ind., 2009 WL 4730570, at *3 (S.D. Tex. Dec. 7, 2009) (quoting Tomlinson v. Allstate Indem. Co., 2006 WL 1331541, at *3 (E.D. La. May 12, 2006)).  "[A] plaintiff's failure to join a non-diverse defendant to an action prior to removal when such plaintiff knew of a non-diverse defendant's identity and activities suggests that the

purpose of the amendment is to destroy diversity jurisdiction."
Lowe v. Singh, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010)
(quoting Schindler v. Charles Schwab & Co., Inc., 2005 WL 1155862,
at *3 (E.D. La. May 12, 2006)).

United Fire argues that three points establish that the
primary purpose of Mia Reed's proposed Second Amended Complaint is
to destroy diversity:

> First, Plaintiff tried filing separate cases in state
> court.   Secondly, Plaintiff opposed United National's
> Motion to Intervene based on it not being timely, among
> other things.   Third, Plaintiff tried to destroy
> diversity by adding the two non-diverse defendants with
> vague negligence claims that are barred by limitations.
> Now, Plaintiff has recast these claims as breach of a
> fiduciary duty which also fail.[48]

Mia Reed alleges that it seeks to amend its complaint because of
newly-learned information:

> After Plaintiff learned that United National planned to
> rely on the affirmative defense of untimely notice of
> claim, Plaintiff discovered that United National was
> contending that Sheryl Bittick and the GEM Insurance
> Agency ("Gem"), to whom Plaintiffs had given timely
> notice and upon whom Plaintiff relied[] for giving United
> National timely notice as its agent, were not technically
> United National's agents.   Plaintiffs then, in compliance
> with the court's Amended Docket Control Order, sought to
> join Ms. Bittick and Gem.[49]

Mia Reed further argues that "[t]he fact that Plaintiff was not
aware of Union National's affirmative defense of failure of
notification, or the role that the non-diverse defendants allegedly

---

[48]United Fire's Response, Docket Entry No. 48, pp. 5-6.

[49]Mia Reed's Amended Motion for Leave, Docket Entry No. 46,
p. 2.

played in the course of events"[50] shows that its purpose in pursuing the amendment is not to destroy diversity.

It is not immediately obvious to which affirmative defense Mia Reed is referring.  In United National's Answer it asserts two defenses that may be relevant:

> 30.  United National asserts that Plaintiff failed to comply with conditions precedent to recovery under the policy that forms the basis of this lawsuit.

> 31.  United National asse[r]ts that Plaintiff failed to comply with the pre-suit notice requirements required by the Texas Insurance Code.[51]

Mia Reed knew or should have known of these two affirmative defenses in November of 2010 because they were pleaded by United Fire in its Original Answer.[52]  These two defenses could not, therefore, be the basis of any newly-acquired knowledge justifying Mia Reed's late amendment.

In its Amended Answer United National added another affirmative defense:

> 35.  United National asserts that Plaintiff failed to provide prompt notice of their Hurricane Ike claim and that such untimely notice has prejudiced United National.[53]

---

[50]*Id.* at 4.

[51]Defendant United National Insurance Company's Answer and Affirmative Defenses, Exhibit 2 to United National Insurance Company's Motion to Intervene, Docket Entry No. 25-2, p. 4.

[52]Defendant's Original Answer, Exhibit D to Defendant's Notice of Removal, Docket Entry No. 1-4, pp. 3-4.

[53]Defendant United National Insurance Company's First Amended Answer and Affirmative Defenses, Docket Entry No. 45, p. 5.

But because this Amended Answer was filed on the same day as Mia
Reed's Amended Motion for Leave, the Amended Answer could not
itself serve as the basis for newly-acquired knowledge that would
justify Mia Reed's proposed joinder.  (United National's Answer in
the original state court case did not assert this affirmative
defense of failure to notify.[54])   Although Mia Reed could have
learned of United National's intention to assert this affirmative
defense in the course of discovery or discussions with opposing
counsel, Mia Reed has not established that this is the case by, for
example, attaching relevant interrogatories or an affidavit.
Nevertheless, the fact that the state court pleadings do not allege
this defense, while the defense was eventually pleaded in federal
court, supports Mia Reed's contention that it learned that United
National would assert a defense of failure to notify after United
National intervened.

United National argues that Mia Reed should have known the
facts underlying its claim against Bittick and GEM Insurance.

> Plaintiff cannot claim that it did not previously know
> that these causes of action might exist.  For instance,
> Plaintiff claims that the Insurance Agent Defendants did
> not accurately designate the Plaintiff's property on
> their insurance contracts—insurance contracts that were
> issued in 2008.   A simple review of their insurance

---

[54]Defendant United National Insurance Company's Original Answer
[in Cause No. 2011-59341 in the 127th District Court of
Harris County, Texas], attached to United National Insurance
Company's Motion to Intervene, Docket Entry No. 24-2.

policies sometime within the last 5 years would have
alerted Plaintiff to this alleged deficiency.[55]

Even if this were true, it would be evidence only that Mia Reed
should have known of the alleged failure to notify, not that Mia
Reed knew of the need to bring the breach of fiduciary duty claim
against Bittick and GEM Insurance in order to properly respond to
United National's affirmative defense of failure to notify.

In sum, neither party has proffered documentation that either
conclusively substantiates or refutes Mia Reed's assertion that it
learned of United National's defense of failure to notify after
United National intervened in this case.    The only concrete
evidence the court has been able to find in the record is the fact
that the affirmative defense was not pleaded in United National's
original state-court answer but was eventually pleaded after United
National intervened.    The court finds that Mia Reed's explanation
for its late amendment is more likely true than not, and that this
explanation adequately explains the timing of Mia Reed's Motion for
Leave.    The court therefore concludes that Mia Reed is not seeking
to join the non-diverse defendants primarily for the purpose of
defeating this court's jurisdiction.

2.    Mia Reed's Diligence in Filing Leave to Amend

When plaintiffs propose an amendment to add nondiverse
defendants after removal based on diversity jurisdiction, courts

---

[55]United National's Response to Plaintiff's Motion for Leave,
Docket Entry No. 40, p. 4.

generally scrutinize the amount of time that passed between the
filing of the original petition and the motion for leave to amend
and between the notice of removal and the motion for leave to
amend.   See Gallegos, 2009 WL 4730570, at *4 (finding that the
plaintiff was dilatory after examining the delay since the filing
of the state-court action and the notice of removal); Irigoyen v.
St. Farm Lloyds, 2004 WL 398553, at *4 (S.D. Tex. January 5, 2004)
(same).

United Fire argues that Mia Reed's lack of diligence is
evidenced by the fact that "the suit against United Fire has been
on file for 18 months and Hurricane Ike occurred over 3 ½ years
ago."[56]  Mia Reed filed its initial Motion for Leave on March 2,
2012.  This filing came approximately a year and a half after the
case was originally filed in state court and then removed.  Given
the court's conclusion above that Mia Reed was not in a position to
appreciate the importance of bringing a claim against the non-
diverse defendants until after United National intervened, the more
relevant time period to consider is the delay between United
National's entrance into the case and Mia Reed's filing ot its
motion for leave.  Mia Reed first sought to amend within two months
after the court granted United National's motion to intervene.
However, Mia Reed's Motion for Leave alleged a cause of action that
Mia Reed abandoned after the defendants attacked it as barred by

---

[56]United Fire's Response, Docket Entry No. 48, p. 6.

the statute of limitations.  Assuming that the original negligence claim was futile, Mia Reed did not file a viable motion for leave to amend until it filed its Amended Motion for Leave approximately three months after United National became a party to this case. This factor does not favor granting leave to amend.

### 3.   Mia Reed's Injury If the Amendment is Not Allowed

Denying Mia Reed's Amended Motion for Leave raises the possibility of inconsistent results in parallel state and federal proceedings.  It would be inconsistent if United National succeeded on its affirmative defense of failure to notify in federal court, while the non-diverse defendants were held not liable in state court on the basis of a finding that they did notify United National.  Part of the rationale behind the Hensgens analysis is the avoidance of such inconsistencies.  See Hensgens, 833 F.2d at 1182.  The court therefore concludes the third Hensgens factor weighs in favor of granting the motion for leave to amend.

### 4.   Other Equitable Factors

The court finds no additional equitable factors relevant to whether it should grant Mia Reed's Amended Motion for Leave.

## C.  Conclusion

The court has concluded that Mia Reed is not seeking amendment in order to destroy diversity, that Mia Reed was not clearly diligent, and that denying leave to amend creates the possibility

of inconsistent results in the state and federal proceedings.  The court concludes that the interest of the present defendants in maintaining a federal forum is outweighed by the inefficiency that would result from parallel state and federal proceedings.  The court will therefore grant Mia Reed's Amended Motion for Leave. Because the court will grant Mia Reed's Amended Motion for Leave, Mia Reed's initial Motion for Leave will be denied as moot.[57]

### IV. Remand

Where a court permits the amendment of a plaintiff's pleadings to add a nondiverse defendant, thereby destroying diversity, the court must then remand the action to the state court.  If the amendment is not allowed, the court maintains jurisdiction.  See 28 U.S.C. 1447(e); Hensgens, 833 F.2d at 1182.  Because the court will grant Mia Reed's Amended Motion for Leave, the court will remand this action to state court.

### V. Conclusion and Order

For the reasons explained above, the court concludes that Mia Reed has established that it is entitled to join the new, nondiverse defendants to this action.  Accordingly, Plaintiffs' Amended Motion for Leave to Amend Complaint and for Remand (Docket

---

[57]The court rejects the defendants' challenges to the standing of Mia Reed and MRX GP, LLC because the issue is insufficiently briefed and supported.  See supra text accompanying notes 40 and 41.

Entry No. 46) is **GRANTED**.   Plaintiff's Motion for Leave to Amend Complaint (Docket Entry No. 36) is **DENIED as moot.**   United Fire's Request for Oral Hearing (Docket Entry No. 39) and United National's Request for Oral Argument (Docket Entry No. 42) are **DENIED**.   This action is **REMANDED** to the 61st District Court of Harris County, Texas.   The Clerk will provide a copy of this Memorandum Opinion and Order to the District Clerk of Harris County, Texas.

      **SIGNED** at Houston, Texas, on this the 27th day of June, 2012.

                                                              SIM LAKE

                                    UNITED STATES DISTRICT JUDGE